UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A.H. Lundberg Associates, Inc.,           )
                                          )
                    Plaintiff,            )     Case No. _____
                                          )
        v.                                )     **COMPLAINT FOR INJUNCTION,**
                                          )     **DAMAGES, AND OTHER RELIEF**
TSI, Inc. ,                               )
                                          )
                    Defendant.            )
_____)

A.H. Lundberg Associates, Inc. hereby states its complaint against TSI, Inc. as follows:

## I. PARTIES

1.      Plaintiff A.H. Lundberg Associates, Inc. ("Lundberg") is a Washington corporation with its principal place of business in Bellevue, Washington.  Lundberg is a leading engineering and equipment supplier in the pulp and paper industry, wood products industry, and many other process industries.  Lundberg is known for its pollution compliance solutions.

2.      Defendant TSI, Inc. ("TSI") is a Washington corporation with its principal place of business in Lynnwood, Washington.  Upon information and belief, TSI designs and builds equipment for automated plants in the engineered wood and biomass industries.  TSI claims to offer pollution compliance systems in competition with Lundberg.

## II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(b).  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) because all

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

251608.0049/6050125.1

1   claims in suit are so related that they form part of the same case or controversy under Article III

2   of the United States Constitution. Venue is proper under 28 U.S.C. § 1391(b)(1) because TSI

3   resides in this judicial district.

### III.  FACTUAL ALLEGATIONS

**A.      Lundberg as an Innovator in Producing Environmentally Sound Equipment**

4.      Lundberg is a leading engineering and equipment supplier in the pulp and paper and other industries.  Lundberg supplies customized air pollution control systems and evaporation technology as well as practical, economically sound solutions for energy efficiency and chemical processing.

5.      The history of Lundberg, and the company's wealth of experience, dates back to the 1930's when Alerick Halvar Lundberg started working for a sulfite pulp manufacturer.  Alerick Lundberg formed A.H. Lundberg, Inc. in 1951, acting as a representative for some of the most important companies in the pulping industry.

6.      Starting in the 1950's Lundberg and associated companies began to operate as a worldwide presence; the Lundberg expertise was recognized across the globe, and, at times, Lundberg has had related affiliates in Canada, Portugal, Austria, Spain, and Belgium, in addition to the United States.

7.      In 2002, Lundberg acquired the intellectual property of Geoenergy International Corporation ("Geoenergy®"), which designed and supplied environmental control systems to a variety of industries.  Of primary importance in this acquisition, were Geoenergy®'s proprietary designs for a Wet Electrostatic Precipitator ("Wet ESP"), which Lundberg used for fine particulate emissions control in industrial applications.

8.      Lundberg's Wet ESPs feature a special E-Tube® design with a proprietary disk-in-tube electrode configuration.  Lundberg's Wet ESPs can be used for wood dryers in the panelboard and wood pellet industries, sewage sludge incinerators, fiberglass/mineral wool forming operations, hazardous waste incinerators, biomass-fired boilers, and fine particle sources at many other process applications.

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

251608.0049/6050125.1

9.     In addition to the Wet ESPs, Lundberg also acquired and built dedicated thermal oxidizer systems for harsh industrial environments. These Lundberg systems are designed to combust a wide variety of industrial pollutants and to meet or exceed all environmental requirements.   Lundberg's GeoTherm® Regenerative Thermal Oxidizers ("RTO") and GeoCat® Regenerative Catalytic Oxidizers ("RCO") are a proven economical and energy-efficient family of technologies designed to meet this challenge.

10.     Lundberg conducts business in virtually every part of the world and has become known as a leader in environmental solutions. Lundberg has supplied its Wet ESP, RTO, and RCO technology to manufacturers across a variety of industries.   Since the mid-1980s, Geoenergy/Lundberg has installed more Wet ESPs in North America than any other company. Geoenergy was the first company to introduce a tube-type Wet ESP into the wood products industry.

**B.     TSI's Agreement to Protect Lundberg's Trade Secrets**

11.     TSI opened in 1992 to provide more effective machines and systems for the engineered wood and biomass industries.

12.     TSI entered into a business relationship with Lundberg beginning in 2007 and was also a customer of Lundberg's.   TSI relied on Lundberg's products for use with the engineered wood and biomass wood dryer systems that TSI designed and supplied.   TSI purchased Wet ESP, RTO, and RCO products from Lundberg to sell to customers of TSI.

13.     As part of their business relationship, TSI and Lundberg entered into a non-disclosure agreement drafted by TSI. *See* Ex. 1. The non-disclosure agreement stated that "[i]n connection with any Project, the parties desire to protect their proprietary rights and any confidential information to be shared between them and desire to give each other written assurances with respect to the confidentiality, nondisclosure and use of such information."

14.     TSI's non-disclosure agreement with Lundberg explicitly recognized Lundberg's "plans, trade secrets, data, know-how, concepts, processes, [and] techniques" along with many other forms of "Confidential Information."   Under the non-disclosure agreement,

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

251608.0049/6050125.1

TSI agreed that all of Lundberg's trade secrets and other Confidential Information would remain Lundberg's "exclusive property."   TSI also agreed not to use any of Lundberg's Confidential Information "for any purpose other than the Project" with Lundberg.

15.   TSI's obligations under the non-disclosure agreement were perpetual; TSI agreed to protect and not to misuse any of Lundberg's trade secrets or Confidential Information "for as long as any Confidential Information disclosed by the parties to each other is in possession or knowledge of the recipient."

16.   William B. Teal, the President of TSI, executed the non-disclosure agreement on July 30, 2012.

**C.   TSI's Hire of Former Lundberg Employee, Gary Raemhild**

17.   Gary Raemhild was a principal of Geoenergy® who Lundberg hired shortly after Lundberg's acquisition of Geoenergy®'s assets.   Raemhild remained with Lundberg helping to build and improve Lundberg's Wet ESP and other systems until August, 2012.   He was a critical part of Lundberg's Geoenergy® team.

18.   As part of his employment for Lundberg, Raemhild signed a Confidentiality, Noncompetition and Nonsolicitation Agreement on July 24, 2003.   *See* Ex. 2.   By this Agreement, Raemhild "acknowledge[d] that by virtue of his employment and position with [Lundberg], [Raemhild] has direct access to a substantial portion of [Lundberg's] confidential business records and information, the disclosure of which to [Lundberg's] competitors or other third parties could be highly detrimental to [Lundberg]."   Raemhild explicitly agreed to protect as confidential "existing and to-be-developed or acquired product designs and services, for all [Lundberg] products, systems, and services including regerative thermal oxidizers, regenerative catalytic oxidizers, and wet electrostatic precipitators."   To this end, Raemhild agreed that he would "not, during or at any time after the termination of his employment with [Lundberg], regardless of the reason for such termination, disclose [Lundberg's] Confidential Information to any person, firm, corporation, association or other entity, for any reason."   Importantly,

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 4

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

251608.0049/6050125.1

Raemhild agreed and was obligated not to "remove from [Lundberg's] premises (physically or electronically) any Confidential Information."

19.     In August 2012, Raemhild resigned from Lundberg to work for TSI.

20.     On August 17, 2012, Lundberg sent Raemhild, who was then employed by TSI, a letter reminding him of his confidentiality, noncompetition, and nondisclosure obligations to Lundberg.

**D.     TSI Steals Lundberg's Technology and Sells it as TSI's Own**

21.     Immediately after TSI hired Raemhild, TSI began offering Wet ESPs, RTOs, and RCOs. This new technology constitutes TSI entire pollution abatement product line.

22.     Beginning after Raemhild's hire in the fall of 2012, TSI's website began to feature pictures of TSI's "new" technology. The equipment shown on TSI's website is actually Lundberg's, designed by Geoenergy®/Lundberg and manufactured under contract for Lundberg. Lundberg engineered, manufactured, and installed some of the equipment for TSI at a pellet mill in Waycross, GA, in its capacity as a subcontractor for TSI. On its website, TSI misrepresents the nature of its products by claiming the Lundberg products as its own. The only reason TSI can offer the environmental control products is because it learned Lundberg's trade secrets and hired Raemhild, without whom TSI could not have designed its own products. TSI's website falsely designates the origin of TSI's goods; TSI is reverse passing off Lundberg's equipment as its own.

23.     TSI's products are copied from the Lundberg products designs based on information and drawings provided from Raemhild. TSI's design of its equipment using the Lundberg trade secrets and confidential information violates TSI's non-disclosure agreement with Lundberg as well as Raemhild's Confidentiality, Noncompetition and Nonsolicitation Agreement with Lundberg. The actual design of TSI's products demonstrate that, in violation of both agreements, Raemhild shared Lundberg's confidential design information and trade secrets which TSI copied and used to compete with Lundberg.

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 5

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

24.     TSI's own press release confirms its willful disregard of obligations to protect Lundberg's trade secrets and confidential information. *See* Ex. 3. TSI's press release issued in November 2013 states "TSI Launches Emissions Control," which acknowledges that TSI was not providing the disputed technology before hiring the former Lundberg employees and breaching its confidentiality and non-disclosure agreement and Raemhild's Confidentiality, Noncompetition and Nonsolicitation Agreement. The press release states that TSI "recently launched its own in-house division for the production of Emission Control Systems, specifically wet electrostatic precipitators (Wet ESPS)."

25.     Slandering Lundberg, the press release goes on to state that TSI has "a long history of working with other suppliers of this equipment . . . however, . . . we began to see shortcomings in design that we were powerless to address and were often left holding the bag for performance issues as a result. The solution was to take matters into our own hands and develop systems that we knew would match the high standards we implement in our other products." The press release claims that TSI developed its own systems, but that is a misrepresentation. Rather, TSI copied Lundberg's system and used confidential information and trade secrets learned from Lundberg employees. TSI's claim to have taken matters into its own hands and developed its own systems falsely describes the nature of its Wet ESP technology and reverse passes off Lundberg's innovations as TSI's own.

26.     The TSI press release also boasts that "TSI has hired two highly experience executives from the emission control industry, Gary Raemhild and Jarrad Markley, and tasked them with recruiting the staff and setting up a process control and engineering group with the existing TSI structure." By asking Raemhild to develop a product line by using Lundberg's technology, TSI induced Raemhild to breach his Confidentiality, Noncompetition and Nonsolicitation Agreement.

27.     As if the prior phrasing did not say enough about TSI's conduct, TSI's press release also confirms TSI's misuse of Lundberg's trade secrets and confidential information. Specifically, TSI claims "several key improvements." The press release does not list what the

COMPLAINT FOR INJUNCTION, DAMAGES, AND OTHER RELIEF - 6

alleged "improvements" are. These statements, along with the manner in which TSI created its technology, misrepresent the nature, quality, and characteristics of Lundberg's goods to the public.

28.     In addition to hiring Lundberg's key employee, inducing Ramehild to breach his obligations not to disclose Lundberg's confidences and trade secrets, copying Lundberg's technology, and misusing Lundberg's trade secrets, TSI used Raemhild's confidential knowledge of Lundberg's customers and pending proposals to obtain contracts to sell products that TSI would not have obtained without using Raemhild's confidential knowledge in breach of his Confidentiality, Noncompetition and Nonsolicitation Agreement.   Further, TSI and Raemhild approached clients and potential clients who had been working with Lundberg, tortiously interfering with Lundberg's contractual relations.

## IV.  CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION – FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION UNDER 15 U.S.C. § 1125(a)

29.     Lundberg repeats, realleges, and incorporates ¶¶ 1-28 stated above.

30.     By marketing Lundberg's technology as TSI's own where TSI has only slightly modified the technology, TSI is reverse passing off Lundberg's equipment and innovations. TSI's false claims to have designed its system misrepresent the nature, characteristics, qualities, and origin of its goods because, in fact, TSI stole and used Lundberg's design along with trade secrets and confidential and proprietary information from Raemhild.

31.     By claiming "improvements" in the Wet ESP design without stating what these improvements are, TSI is falsely describing and misrepresenting its products.

32.     TSI has made these misrepresentations publicly, both on its website and in a press release beginning in 2013 and continuing through the present.

33.     TSI's descriptions of its products are likely to cause mistake and to deceive as to the origin of its goods.  TSI never states where the design of its products came from or how it began to offer the technology.

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 7

34.     TSI's descriptions of its products misrepresent the nature, characteristics, and qualities of its goods and commercial activities.

35.     TSI's conduct violates section 1125(a) and has damaged Lundberg.

**SECOND CAUSE OF ACTION – BREACH OF CONTRACT**

36.     Lundberg repeats, realleges, and incorporates ¶¶ 1-35 stated above.

37.     Lundberg and TSI entered into a valid non-disclosure agreement drafted by TSI on July 30, 2012.

38.     Among other obligations, TSI agreed to protect Lundberg's proprietary rights, trade secrets, and confidential information both during and after the agreement.  Raemhild also agreed to protect Lundberg's information when he signed the Confidentiality, Noncompetition and Nonsolicitation Agreement.

39.     TSI breached its non-disclosure agreement when it incorporated Lundberg's proprietary rights, trade secrets, and confidential information into TSI's technology and equipment.  TSI also induced Raemhild to breach his Confidentiality, Noncompetition and Nonsolicitation Agreement when it hired Raemhild away from Lundberg and tasked him with developing a competing Wet ESP product line for TSI that incorporated Lundberg's trade secrets and confidential designs.

40.     TSI's conduct violates the non-disclosure agreement and Raemhild's Confidentiality, Noncompetition and Nonsolicitation Agreement and has damaged Lundberg.

**THIRD CAUSE OF ACTION – UNJUST ENRICHMENT**

41.     Lundberg repeats, realleges, and incorporates ¶¶ 1-40 stated above.

42.     To the extent that TSI did not agree, expressly or by implication, to protect and not to use Lundberg's proprietary rights, trade secrets, and confidential information, a legal obligation to limit TSI's misuse can be implied by law.  This obligation is echoed in the confidentiality, noncompetition, and nondisclosure obligations of Raemhild, who TSI hired away from Lundberg.  By hiring Raemhild to build off of Lundberg's technology designs to create competing models for TSI, TSI induced Raemhild to breach his Confidentiality,

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 8

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

251608.0049/6050125.1

1   Noncompetition and Nonsolicitation Agreement.

2       43.     TSI benefitted from the use of Lundberg's proprietary rights, trade secrets, and

3   confidential information by incorporating this information into TSI's equipment.  TSI knew of

4   the benefit of Lundberg's information because the misuse allowed TSI to launch a new in-

5   house division.  TSI boasted about the efficiency and efficacy of this new division and TSI's

6   "improvements" in technology.  TSI also understood the benefit of hiring Raemhild and

7   gaining the value of the confidential information that Raemhild knew about Lundberg and its

8   potential and actual customers.  TSI announced Raemhild's hire in a press release.  In violation

9   of Raemhild's Confidentiality, Noncompetition and Nonsolicitation Agreement, TSI reaped the

10  benefit of Raemhild's knowledge of Lundberg's systems when Raemhild helped design a

11  competing system for TSI.  In addition, TSI reaped the benefit of information about Lundberg's

12  customers and contacts when it began pitching to these contacts.

13      44.     Such enrichment to TSI was at Lundberg's expense.  TSI slammed Lundberg in

14  TSI's press release, solicited Lundberg's customers, and never credited Lundberg for the

15  technology.

16      45.     TSI's conduct constitutes unjust enrichment and has damaged Lundberg.

17  **FOURTH CAUSE OF ACTION – MISAPPROPRIATION OF TRADE SECRETS**

18  **UNDER RCW 19.108**

19      46.     Lundberg repeats, realleges, and incorporates ¶¶ 1-45 stated above.

20      47.     TSI acknowledged that it was obligated to protect Lundberg's trade secrets in

21  the July 30, 2012 non-disclosure agreement.

22      48.     Lundberg's know-how, expertise, processes, methods, technology, innovations,

23  customer lists and other information constitute trade secrets because the information was not

24  known in the industry, as confirmed by both the TSI non-disclosure agreement and Raemhild's

25  Confidentiality, Noncompetition and Nonsolicitation Agreement.  Lundberg protected its trade

26  secrets with these contractual agreements and by allowing access to the information to only

27  employees who needed to know the information to design and improve it.  Lundberg's

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 9

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

251608.0049/6050125.1

information derived value from being kept secret because Lundberg was hired as a supplier of technology to other companies across various industries who did not possess the same information and technology, including TSI.

49.     TSI misappropriated Lundberg's trade secrets when TSI used the trade secrets without express or implied consent by Lundberg.  TSI also misappropriated Lundberg's trade secrets when it hired Raemhild to use his knowledge of Lundberg's trade secrets to build competing technology for TSI.

50.     TSI knew that its use of Lundberg's trade secrets was improper because TSI was bound by the non-disclosure agreement with Lundberg.  Therefore, TSI acquired Lundberg's trade secrets under circumstances giving rise to a duty to maintain its secrecy and limit its use.

51.     TSI also knew that its use of Lundberg's trade secrets was improper because TSI acquired the information from Raemhild who was under a duty not to compete with Lundberg and to protect Lundberg's information.  Thus, TSI acquired Lundberg's trade secrets while having reason to know that Raemhild should have protected Lundberg's trade secrets and was breaching his duties to maintain the trade secrets in secrecy.

52.     TSI's conduct constitutes trade secret misappropriation and has damaged Lundberg.

## FIFTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH PROSPECTIVE AND ACTUAL CONTRACTS

53.     Lundberg repeats, realleges, and incorporates ¶¶ 1-52 stated above.

54.     Lundberg had valid contracts and economic expectancies with TSI and others to provide Lundberg's technology.  Specifically, Lundberg expected to be hired for projects for German Pellet and Zilkha.  TSI ended up stealing both of these projects either immediately before or shortly after Raemhild's departure from Lundberg and move to TSI.  Upon information and belief, TSI also interfered with other Lundberg contracts and expectancies.

55.     TSI knew about these contracts and expectancies because TSI had been in a business relationship with Lundberg for years and TSI had solicited Lundberg to be a

COMPLAINT FOR INJUNCTION, DAMAGES, AND OTHER RELIEF - 10

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

subcontractor to TSI on the German Pellet project.  In addition, TSI learned of Lundberg's contracts and expectancies when it began negotiating with Raemhild to hire him away from Lundberg.  Raemhild had been the primary point of contact for the Zilkha job while he was at Lundberg.

56.     TSI intended to interfere with Lundberg's contracts and expectancies; TSI purposefully hired Raemhild and developed competing technology using Lundberg's trade secrets.  TSI then bragged about its "improvements" to the public.  By taking this course of action, TSI breached its own non-disclosure agreement with Lundberg and induced Raemhild to breach his Confidentiality, Noncompetition and Nonsolicitation Agreement.  TSI took advantage of Raemhild's breach by exploiting his knowledge of Lundberg's trade secrets and confidential information to develop competing technology and poach Lundberg customers and expectancies.

57.     In addition to interfering with Lundberg's contracts and expectancies via TSI's website and press releases, TSI also contacted and solicited potential and actual Lundberg customers.  As an example, TSI could only have presented a Wet ESP product to Zilkha, one of Lundberg's potential clients, with Raemhild's help.  Before Raemhild left Lundberg for TSI, TSI did not offer a Wet ESP and could not have completed the Zilkha project.

58.     TSI's interference was improper because TSI and Raemhild were under obligation to protect Lundberg's proprietary rights, trade secrets, and confidential information.  Further, TSI had worked with Lundberg in a business relationship for years prior to the interference.

59.     TSI's conduct constitutes tortious inference with prospective and actual contracts and has damaged Lundberg.

**SIXTH CAUSE OF ACTION – VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT UNDER RCW 19.86**

60.     Lundberg repeats, realleges, and incorporates ¶¶ 1-59 stated above.

61.     TSI committed an unfair and deceptive act in trade and commerce when it

COMPLAINT FOR INJUNCTION, DAMAGES, AND OTHER RELIEF - 11

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

251608.0049/6050125.1

1  misappropriated and incorporated into its technology Lundberg's confidential information and

2  trade secrets and later offered this technology for sale as TSI's own.   TSI's conduct violates

3  the Lanham Act and RCW 19.108 and is deceptive and unfair on its face.

4      62.    TSI's actions have the capacity to materially deceive a substantial portion of the

5  public because TSI has made and continues to make public representations about its technology

6  that would lead consumers to believe that (1) TSI owns the technology and its use is

7  authorized; (2) TSI designed the technology; (3) TSI improved existing technology; and (4)

8  TSI was authorized to hire Raemhild to build competing technology.  TSI's actions violate the

9  Lanham Act, a statute that has a public interest impact.

10      63.    TSI's unfair and deceptive actions have injured Lundberg in its business and

11  property.   TSI's unauthorized incorporation, use, and sale of Lundberg's information and

12  technology both devalues Lundberg's technology and undermines the reputation and goodwill

13  of Lundberg's business while allowing TSI to profit at the same time.   TSI's actions also

14  deprived Lundberg its property and/or intellectual property rights.

15      64.    There is a causal link between TSI's unfair and deceptive actions and the injury

16  Lundberg has suffered because TSI manufactured and offered for sale Lundberg's proprietary

17  technology without Lundberg's authorization and with disregard for its reputation and trade

18  secret rights.  TSI has been unjustly enriched by the offer for sale of property and trade secrets

19  that do not belong to TSI and has impaired Lundberg's ability to control its own property.

20      65.    TSI's conduct constitutes a violation of the Washington Consumer Protection

21  Act and has damaged Lundberg.

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff A.H. Lundberg Associates, Inc. prays for relief as follows:

22  1.    For a judgment against TSI;

24  2.    For an injunction against TSI that prohibits TSI from manufacturing, selling,

26        incorporating, or otherwise using Lundberg's proprietary and confidential

27        information and trade secrets.

COMPLAINT FOR INJUNCTION, DAMAGES, AND
OTHER RELIEF - 12

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

251608.0049/6050125.1

1    3.    For damages against TSI in an amount to be determined at trial;

2    4.    For reasonable attorneys' fees and the costs of pursuing Lundberg's claims as

3    may be allowed by law; and;

4    5.    Such other and further relief as the Court determines is just and proper.

6    DATED: July 31, 2014

7                  LANE POWELL PC

9                By     /s/ Randall P. Beighle
                Randall P. Beighle, WSBA No. 13421

10

11               By  /s/ Tiffany Scott Connors
                Tiffany Scott Connors, WSBA No. 41740
                Telephone: 206.223.7000

12               Facsimile: 206.223.7107
                Attorneys for Plaintiff

13               A.H. Lundberg Associates, Inc.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

# EXHIBIT 1



Responsible Innovation

July 30, 2012

Stephen Johnson
A. H. Lundberg Associates Inc.
13201 Bel-Red Road
Bellevue, WA 98012
Phone: 425-283-5070
Fax:    425-283-5081

Re: Confidentiality Agreement

Dear Mr. Johnson

This letter contains the conditions of a non-disclosure agreement between TSI (the "Customer") and A. H. Lundberg Associates Inc. (the "Company"). In connection with any Project, the parties desire to protect their proprietary rights and any confidential information to be shared between them and desire to give each other written assurances with respect to the confidentiality, nondisclosure and use of such information.

The Company and the Customer each agrees to preserve in confidence at all times and not to disclose to any other person or entity, or provide information to any other person or entity regarding any Confidential Information. "Confidential Information" means, but is not limited to: all plans, trade secrets, data, know-how, concepts, processes, techniques, specifications, drawings, instructions, research, formulae, applications, test procedures and results, chemical or ceramic formulations, compositions and products, equipment, identity and description of records, customer lists, supplier identity, marketing and sales plans, forecasts, computer data, financial information, costs, data, pricing information and all other information, concepts or ideas involving or reasonably related to the business or prospective business of either party that is not generally available to the public. "Confidential Information" also means information received by a party that the party has a bona fide obligation, contractual or otherwise, not to disclose. "Confidential Information" does not include any information that: (i) is or becomes generally known or available to the public by publication, commercial use, or otherwise through no violation of this Agreement; (ii) is lawfully obtained from a third party having the right to make the disclosure; or (iii) a party can prove it knew prior to its association with the other party.

All Confidential Information disclosed by one party to the other and all materials relating to Confidential Information shall remain the exclusive property of the disclosing party. A party may disclose Confidential Information provided to it under this Agreement only (i) to the recipient's employees and agents who have a need to know the Confidential Information for the purpose of carrying out the Project and who have agreed to be



*Responsible Innovation*

bound by the terms of this agreement, or (ii) upon express, prior written consent from the other party. Each party will immediately notify the other party of any actual or suspected unauthorized use or disclosure of Confidential Information and will cooperate with the other party in obtaining appropriate relief.

The Company and the Customer each agrees not to use any Confidential Information for any purpose other than the Project. Each party further agrees that it will immediately return to the other party all Confidential Information provided to it by the other party upon completion or termination of the Project, or at any time upon request.

The agreements and obligations of the parties set forth in this agreement will continue in effect for as long as any Confidential Information disclosed by the parties to each other is in possession or knowledge of the recipient.

This agreement shall not create any obligation on the part of either party to proceed with the Project, and nothing in this agreement shall be deemed to create any joint venture, partnership, agency or other relationship between the parties. Neither party may assign this Agreement or any of its rights or obligations under this Agreement without the prior written consent of the other party. This Agreement expresses the entire agreement of the parties hereof and is governed by the laws of the State of Washington, except those governing conflicts of law.

Please sign below to indicate your acceptance of the terms of this letter.

Very truly yours,

Signature: _____   Date: 7/30/12

By:     William B. Teal

Title:    President


Accepted and Agreed to:

Signature: _____   Date: July 30, 2012

By:     Steve Johnson

Title:    Contract Administrator

# EXHIBIT 2

CONFIDENTIALITY, NONCOMPETITION
AND NONSOLICITATION AGREEMENT

THIS CONFIDENTIALITY, NONCOMPETITION AND NONSOLICITATION AGREEMENT ("Agreement") is entered into by and between A.H. Lundberg Associates, Inc., a Washington corporation ("Lundberg" or "Employer"), and Gary Raemhild ("Employee").

WHEREAS Employer and Employee wish to enter into a Confidentiality, Noncompetition and Nonsolicitation Agreement in consideration for employment by Employer;

NOW, THEREFORE, Employer and Employee agree as follows:

1.    Confidentiality.

(a)    Employee acknowledges that by virtue of his employment and position with Employer, Employee has direct access to a substantial portion of Employer's confidential business records and information, the disclosure of which to Employer's competitors or other third parties could be highly detrimental to Employer.

(b)    Employer acknowledges that Employee enters employment with Employer with certain knowledge, experience, and expertise designing, selling, and installing regenerative thermal oxidizers, regenerative catalytic oxidizers, and wet electrostatic precipitators and other air pollution control technologies.

(c)    For purposes of this Agreement, "Confidential Information" refers to all nonpublic business information and documents regarding Employer or any aspect of its business that is in the possession or control of Employer.  Confidential Information includes, without limitation, business records, customer lists, customer information, marketing strategies and information, business development strategies and information, pending research and developmental studies, personnel information, existing and to-be-developed or acquired product designs and services, for all Employer products, systems, and services including regenerative thermal oxidizers, regenerative catalytic oxidizers and wet electrostatic precipitators, new product plans or ideas, market surveys, financial information, pricing methods or data, terms of contracts with present or past customers, proposals or bids, procedural and technical manuals and practices, servicing routines, and parts and supplier lists proprietary to the Employer or its customers or suppliers, and any other sorts of items or information of the Employer or its customers or suppliers which are not generally known to the public at large.  Employee agrees that he has the burden to ask Employer if he is unsure whether certain information constitutes Confidential Information. Employee further agrees that in any dispute over whether information constitutes Confidential Information, Employee shall have the burden to prove that the information is not Confidential Information.

(d)    In consideration of his employment by Employer, Employee agrees that he will not, during or at any time after the termination of his employment with Employer, regardless of the reason for such termination, disclose Employer's Confidential Information to any person, firm, corporation, association or other entity, for any reason.  Further, Employee will not disclose

to any person, firm, association or other entity or remove from Employer's premises (physically or electronically) any Confidential Information, except as necessary for the day-to-day operation of Employer's business during the course of Employee's employment with Employer.

(e)     Upon the termination of his employment, regardless of the reason for termination, Employee shall immediately surrender to Employer all Confidential Information (written or electronic) in Employee's possession or control, including any lists, books and records and other documents incident to Employer's business and all other property belonging to Employer.

(f)     In the event of a breach or threatened breach by Employee of the provisions of this paragraph, Employer shall be entitled to an injunction, with a bond set at no greater than $1,000.00, restraining Employee from the actions alleged to constitute a violation of this paragraph including as applicable the disclosing, in whole or in part, of any of Employer's Confidential Information, or the rendering of any services to any person, firm, corporation, association or other entity to whom such information, in whole or in part, has been disclosed or is threatened to be disclosed in violation of this Paragraph. Nothing in this Agreement shall be construed as prohibiting Employer from pursuing any other remedies available to Employer for such breach or threatened breach including the recovery of damages from Employee. Any amounts received by Employee or by any other through Employee in breach of this Agreement shall be held in constructive trust for the benefit of Employer.

2.     <u>Noncompetition and Nonsolicitation.</u>

(a)     During the term of his employment, Employee will not, without the written consent of Employer, in any capacity directly or indirectly engage in, assist others to engage in, own, establish or become a partner, seller, stockholder, director, officer or otherwise, of any business that has the purpose of designing, constructing, or selling equipment in competition with Employer including regenerative thermal oxidizers, regenerative catalytic oxidizers, and wet electrostatic precipitators.

(b)     For a period of five (5) years after the termination of his employment, regardless of the reason for such termination, Employee will not, without the written consent of Employer, in any capacity directly or indirectly engage in, assist others to engage in, own, establish or become a partner, seller, stockholder, director, officer or otherwise, of any business that has the purpose of designing, constructing, or selling equipment in competition with Employer, with the exception of regenerative thermal oxidizers, regenerative catalytic oxidizers, and wet electrostatic precipitators.

(c)     During the term of his employment, Employee will not, without the written consent of Employer, directly or indirectly, on behalf of himself or any other person, firm, Employer or business, engage in the business, whether the sale, design, marketing, or development of products of Employer including regenerative thermal oxidizers, regenerative catalytic oxidizers, and wet electrostatic precipitators.

(d)     For a period of three (3) years after the termination of his employment, regardless of the reason for such termination, Employee will not, without the written consent of Employer,

2

directly or indirectly, on behalf of himself or any other person, firm, Employer or business, engage in the business, whether the sale, design, marketing, or development of products of Employer other than regenerative thermal oxidizers, regenerative catalytic oxidizers, and wet electrostatic precipitators.

(e)     During the term of his employment and for a period of two (2) years after the termination of his employment, regardless of the reason for such termination, Employee will not solicit or attempt to induce any employee, consultant, independent sales representative, distributor, vendor, supplier or other independent contractor of Employer to leave the employ of or terminate his, her or its contract with Employer or interfere in any way with his, her or its relationship with Employer.

(f)     The covenants set forth in subparagraphs 2(a), 2(b), 2(c), 2(d), and 2(e) are independent and in the event that any of such covenants is determined to be not applicable or not enforceable, in whole or part, the other covenants shall continue in full force and effect and be binding upon Employee.

(g)     Employee acknowledges and agrees that the covenants set forth in this Paragraph are reasonable in scope and are necessary to protect the goodwill, proprietary and legitimate business interests of Employer.  Employee further acknowledges and agrees that the covenants are material inducements for Employer to employ him and pay him compensation.  Employee further agrees and represents that his experience and capabilities are such that he can obtain employment in business activities that are different in nature and that do not compete with Employer and that the enforcement of a remedy by Employer for breach of these covenants by way of injunction or otherwise will not prevent Employee from earning a reasonable livelihood.  However, should any court find that any provision of these covenants is unreasonable, invalid, overly broad or unenforceable, whether in period of time, geographical areas, scope of business restriction or otherwise, then in that event, Employer and Employee agree that such covenant or covenants shall be interpreted by the court and enforced by the court to the maximum extent the court deems reasonable.

(h)     In the event of an actual or threatened breach by Employee of the provisions of this paragraph, Employer shall be entitled to an injunction, subject to a bond that shall not exceed $1,000.00, restraining Employee from the actions alleged to constitute a violation or breach of the restrictive covenants contained in this paragraph.  Nothing in this Agreement shall be construed as prohibiting Employer from pursuing any other remedies available to Employer for such breach or threatened breach, including the recovery of damages from Employee.  Any amounts received by Employee or by any other through Employee in breach of this Agreement shall be held in constructive trust for the benefit of Employer.

3

Date: _July 24, 2003_ _____
Employee

A.H. Lundberg Associates, Inc.

Date: _July 24, 2003_ By _____
Its _____

4

**EXHIBIT 3**

# ENERGY
# ■& EMISSIONS

## TSI LAUNCHES EMISSIONS CONTROL



**TSI expands emission control services.**

TSI Inc. of Lynnwood, Wash. recently launched its own in-house division for the production of Emission Control Systems, specifically wet electrostatic precipitators (Wet ESPs) and regenerative thermal oxidizers (RTOs). The systems are designed for wood chip and flake drying systems; they clean particulate from the gas stream and remove harmful volatile organics generated by the drying process. They are specifically tailored to work with TSI's well-known rotary drum wood chip drying systems and as such allow TSI to offer the entire system from one source. In fact TSI reports it is the only company in the world that manufactures both dryers and emission control systems.

Andrew Johnson, Vice President of TSI, comments, "We have a long history of working with other suppliers of this equipment with successful results; however, with experience, we began to see shortcomings in design that we were powerless to address and were often left holding the bag for performance issues as a result. The solution was to take matters into our own hands and develop systems that we knew would match the high standards we implement in our other products."

TSI has hired two highly experienced executives from the emission control industry, Gary Raemhild and Jarred Markley, and tasked them with recruiting the staff and setting up a process control and engineering group with the existing TSI structure.

Early projects are now coming on-line with a new large wood pellet plant in Texas being started up in record time and several other projects for rebuilds and new equipment in progress. The designs look conventional on a superficial look but closer examination reveals several key improvements to both construction and gas flow that enhance overall productivity and maintenance.

www.tsi-inc.net

## USNR-ADEC REDUCES ENERGY, EXHAUST

The Automatic Dryer Exhaust Control (ADEC) system significantly reduces the two most critical costs in drying veneer by decreasing energy consumption at the dryer and lowering ex-



## Lubrication that cuts downtime

Klüber Lubrication knows your profitability requires extended intervals of peak mechanical performance. That's why our wood-processing lubricants are designed to keep your entire production line running smoothly — with minimal maintenance stops.

Our specialty lubricants endure high temperatures and reduce evaporation loss, ensuring long relubrication intervals. And with constant new product development, you can rely on us to keep up with ever-increasing industry requirements.

**Klüber Lubrication North America L.P.**
info@us.kluber.com
www.klubersolutions.com/wood2

## your global specialist

KLÜBER LUBRICATION